UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TIMOTHY BOULDING,

        Plaintiff,                           Hon. Janet T. Neff

v.                                              Case No. 1:08 CV 576

CORRECTIONAL MEDICAL
SERVICES, et al.,

        Defendants.
_____/

**REPORT AND RECOMMENDATION**

This matter is before the Court on Defendants Correctional Medical Services, Inc., Badawi M. Abdellatif, M.D., and Sarah Hope Heebsh, P.A.'s Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6), (dkt. #21); Defendant Joseph Robert Burtch, D.O.'s Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6), (dkt. #24); and Defendants' Motion to Dismiss and/or Motion for Summary Judgment, (dkt. #42).

Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that Defendants Correctional Medical Services, Inc., Badawi M. Abdellatif, M.D., and Sarah Hope Heebsh, P.A.'s Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6), (dkt. #21), be **granted in part and denied in part**; Defendant Joseph Robert Burtch, D.O.'s Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6), (dkt. #24), be **granted**; and Defendants' Motion to Dismiss and/or Motion for Summary Judgment, (dkt. #42), be **granted**. The Court further recommends that Plaintiff's claims against Defendants Belanger and Simmons be **dismissed for failure to timely effect service**.

**BACKGROUND**

According to his pleadings, Plaintiff is a disabled prisoner whose medical impairments require that he perform self-catheterization to empty his bladder. Plaintiff alleges that he also suffers from incontinence. The following allegations are contained in his complaint. (Dkt. #1).

From January 9, 2005 through July 2005, Defendants Burtch and Heebsh "forced [Plaintiff] to reuse catheters, causing repeated infection." Defendants Abdellatif, Rich, Belanger, Simmons, and VanSetters likewise "forced [Plaintiff] to reuse catheters on a continuing basis" even after they were informed that such had previously resulted in infection. Plaintiff has failed to indicate the dates on which this alleged conduct occurred. Defendants Abdellatif, Rich, Belanger, Simmons, and VanSetters also "forced [Plaintiff] to go without diapers [for] ten days" between March 27, 2006, and April 10, 2006.

On October 8, 2007, Plaintiff notified health services that he was suffering from a urinary infection. On December 7, 2007, Plaintiff reiterated that he was suffering from a urinary infection. On December 10, 2007, Plaintiff provided health care with a urine sample. On December 19, 2007, Plaintiff was informed that Dr. Abdellatif "had reviewed the test results, and [determined that] there was no sign of infection." On January 16, 2008, Plaintiff was rushed to a hospital "for treatment of sepsis caused by untreated urinary infection." Plaintiff was later "overdosed" on medication, causing him to again be hospitalized from March 4, 2008, through March 10, 2008.

On January 24, 2008, Plaintiff spoke with Defendant Burdette to request gloves so that he could care for his personal needs without suffering infection. On January 29, 2008, Defendant Burdette informed Plaintiff "that she had received approval from Lansing to give [him] gloves." Seven days later, however, Defendant Burdette "refused to give [Plaintiff] the required gloves, saying it was

up to Dr. Abdellatif." On March 10, 2008, Defendant Burdette informed Plaintiff that she had ordered him "finger prophylactics" instead of gloves. On March 11, 2008, Defendant Abdellatif informed Plaintiff that "the decision for gloves was up to" Defendant Burdette. Because of the refusal by Defendants Abdellatif and Burdette to provide Plaintiff with "medically required items" such as gloves and the proper amount of catheters, he subsequently suffered "three more infections."

As a result of filing grievances regarding these events, Plaintiff has been subjected to the following types of harassment: (1) the confiscation of personal property; (2) interference with his personal and legal mail; and (3) improper denial of grievances. Prison officials have also modified Plaintiff's "medical accommodations. . .despite the fact that [his] medical condition has not improved."

Plaintiff initiated the present action on June 18, 2008, against Correctional Medical Services (CMS), as well as the following individuals: Robert Burtch, Karen Peters, Thomas Birkett, Badawi Abdellatif, Mary Berghuis, Rick Smith, Karen Rich, Brenda Belanger, Teresa Simmons, Julie VanSetters, S.H. Heebsh, and Charlotte Burdette. (Dkt. #1). Plaintiff seeks $35,000,000 in damages, as well as various forms of injunctive relief. Defendants Belanger and Simmons have not yet been served. The remaining Defendants (the "moving Defendants"), upon whom service has been effected, now move for dismissal and/or summary judgment.

**I.      Motion to Dismiss for Failure to Exhaust Administrative Remedies**

The moving Defendants move to dismiss Plaintiff's claims on the ground that he has failed to properly exhaust his administrative remedies.

A.     **Summary Judgment Standard**

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005); *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)); *see also Tucker v. Union of Needletrades, Indus. & Textile Employees*, 407 F.3d 784, 787 (6th Cir. 2005). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Twin City Fire Ins. Co. v. Adkins*, 400 F.3d 293, 296 (6th Cir. 2005).

A prisoner's failure to exhaust his administrative remedies is an affirmative defense, which Defendants have the burden to plead and prove. *Jones v. Bock*, 127 S. Ct. 910, 919-21 (2007). A moving party without the burden of proof needs only show that the opponent cannot sustain his burden at trial. *See Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *see also Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). A moving party with the burden of proof, however, faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). "Where the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the

moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. SCHWARZER, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)). The Sixth Circuit repeatedly has emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561 (quoting 11 JAMES WILLIAM MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 56.13[1], at 56-138 (3d ed. 2000); *Cockrel*, 270 F.2d at 1056 (same). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

### B.   Exhaustion Standard

Pursuant to 42 U.S.C. § 1997e(a), a prisoner asserting an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust all available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516, 524 (2002). Prisoners are no longer required to demonstrate exhaustion in their complaints. *See Jones v. Bock*, 127 S.Ct. 910, 921 (2007). Instead, failure to exhaust administrative remedies is "an affirmative defense under the PLRA" which the defendant bears the burden of establishing. *Id.* With respect to what constitutes proper exhaustion, the Supreme Court has stated that "the PLRA exhaustion requirement requires proper exhaustion" defined as "compliance with an agency's deadlines and other critical procedural rules." *Woodford v. Ngo*, 126 S.Ct. 2378, 2386-87 (2006). In *Bock*, the Court reiterated that

> Compliance with prison grievance procedures, therefore, is all that is
> required by the PLRA to 'properly exhaust.' The level of detail necessary
> in a grievance to comply with the grievance procedures will vary from

> system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion.

*Bock*, 127 S.Ct. at 922-23.

When assessing whether a prisoner has properly exhausted his claims as required by the PLRA, it is appropriate to seek guidance from the substantively similar exhaustion rules applicable to petitions for writ of habeas corpus. *See Woodford,* 126 S.Ct. at 2384. In the habeas context, a petitioner is required to properly present his federal claims through one complete round of the State's established appellate review process. *See O'Sullivan v. Boerckel,* 526 U.S. 838, 845 (1999). To "'protect the integrity' of the federal exhaustion rule, we ask not only whether a prisoner has exhausted his state remedies, but also whether he has *properly* exhausted those remedies." *Id.* at 848 (citation omitted). The Supreme Court has stated that in the habeas context, "the sanction for failing to exhaust properly (preclusion of federal review) is called procedural default." *Woodford,* 126 S.Ct. at 2387. To determine whether a habeas petitioner procedurally defaulted a federal claim in state court, the Court must consider whether: (1) the petitioner failed to comply with an applicable state procedural rule; (2) the last state court rendering judgment on the claim at issue actually enforced the state procedural rule so as to bar that claim; and (3) the state procedural default is an "independent and adequate" state ground properly foreclosing federal habeas review of the federal constitutional claim. *See Hicks v. Straub,* 377 F.3d 538, 551 (6th Cir.2004), *cert. denied,* 544 U.S. 928 (2005); *accord Lancaster v. Adams,* 324 F.3d 423, 436-37 (6th Cir.2003).

Under the procedural default component of § 1997e(a), a prisoner's claims are procedurally defaulted if he fails to complete the administrative review process in accordance with the deadlines and other applicable procedural rules and prison officials actually relied upon the procedural rule to bar review of the grievance. *See Johnson v. Meadows,* 418 F.3d 1152, 1159 (11th Cir.2005), *cert.*

*denied,* 126 S.Ct. 2978 (2006); *Spruill v. Gillis,* 372 F.3d 218, 222 (3rd Cir.2004) (holding that "the determination whether a prisoner has 'properly' exhausted a claim (for procedural default purposes) is made by evaluating the prisoner's compliance with the prison's administrative regulations"). Moreover, just as procedural default in the federal habeas corpus context must be predicated on an adequate and independent state ground, the procedural requirements of a prison grievance system may not be imposed in a way that offends the United States Constitution or the intended purposes of § 1997e(a). *See Spruill,* 372 F.3d at 232.

Defendants have submitted copies of four grievances that Plaintiff filed between February 2006 and March 2008. (Dkt. #21, 24, 43). Plaintiff has neither submitted nor made reference in his complaint or other pleadings to any additional grievances. The Court shall, therefore, examine the four grievances submitted by Defendants to determine which (if any) claims in Plaintiff's complaint have been properly exhausted.

### C.     **Relevant Grievance Policy**

Michigan Department of Corrections Policy Directive 03.02.130[1] articulates the applicable grievance procedures for prisoners in MDOC custody. Inmates must first attempt to resolve a problem orally within two business days of becoming aware of the grievable issue. If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted oral resolution. The policy provides the

---

[1] Three different versions of this policy directive were in force during the time period relevant to the four grievances discussed below. While these three versions are structured and worded differently in certain respects, they are identical with respect to the provisions discussed below. *See* Michigan Department of Corrections, Policy Directive 03.02.130 ¶¶ R-II (eff. Dec. 19, 2003); Michigan Department of Corrections, Policy Directive 03.02.130 ¶¶ P-GG (eff. Mar. 5, 2007); Michigan Department of Corrections, Policy Directive 03.02.130 ¶¶ (eff. July 9, 2007).

following directions for completing grievance forms: "The issues shall be stated briefly. Information provided shall be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included." The inmate submits the grievance to a designated grievance coordinator, who assigns it to a respondent.

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II within five business days of the response, or if no response was received, within five days after the response was due. The respondent at Step II is designated by policy, e.g., the regional health administrator for a medical care grievance. If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form. The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. The Prisoner Affairs Section is the respondent for Step III grievances on behalf of the MDOC director. Time limitations shall be adhered to by the inmate and staff at all steps of the grievance process. The "total grievance process from the point of filing a Step I grievance to providing a Step III response shall be completed within 90 calendar days unless an extension has been approved."

### D. Analysis of Plaintiff's Grievances

1. Grievance LRF-06-02-00224-12E3

Plaintiff initiated this grievance on February 14, 2006, alleging that "Nurse Simmons" refused to supply him with catheters and diapers. (Dkt. #21, Exhibit D). Plaintiff's Step I grievance was

denied, a determination which Plaintiff appealed to Steps II and III of the grievance process. Plaintiff's Step III grievance, however, was "rejected as untimely filed."

The Court assumes that the "Nurse Simmons" identified in this grievance is Defendant Simmons, whom Plaintiff has identified as a registered nurse. As noted above, however, Defendant Simmons has not yet been served in this matter. Because this particular grievance fails to allege any wrongdoing by any of the moving Defendants, it cannot serve to exhaust any of Plaintiff's claims against these Defendants. Moreover, even if this grievance were interpreted as alleging wrongdoing by any of the moving Defendants, the result would be the same because Plaintiff did not pursue this grievance in accordance with the guidelines established by the MDOC.

2.  Grievance LRF-07-05-00766-12I

Plaintiff initiated this grievance on May 9, 2007, alleging that Defendants Rich and Abdellatif failed to supply him with medical gloves. (Dkt. #21, Exhibit D). Plaintiff properly pursued this grievance through all three steps of the MDOC grievance process. While this grievance alleges that Defendant Rich failed to supply Plaintiff with gloves, Plaintiff's complaint contains no such claim. The only claims that Plaintiff has asserted against Defendant Rich are that she forced him to reuse catheters and failed to supply him with diapers. In his complaint, Plaintiff asserts that Defendants Abdellatif and Burdette failed to supply him with gloves. As previously noted, Plaintiff has not submitted copies of his grievances with his complaint or any other pleading. Plaintiff has likewise made no attempt to reference or incorporate into his complaint the claims or allegations articulated in this or any other grievance. The Court concludes, therefore, that this grievance serves to exhaust only Plaintiff's claim that Defendant Abdellatif failed to supply him with medical gloves.

3.     Grievance LRF-08-03-00268-12DI

Plaintiff initiated this grievance on March 11, 2008, alleging that Defendant Abdellatif's "incompetence" caused him to suffer an overdose of Coumadin. (Dkt. #21, Exhibit D). Plaintiff further alleged that Defendant Abdellatif deliberately subjected him to this overdose as retaliation for being sued by Plaintiff in a separate action. *Id.* This grievance was denied on the merits at Steps I and II. Plaintiff appealed the matter to Step III, but the record fails to indicate the Step III disposition. Defendants have failed, therefore, to establish that Plaintiff did not properly exhaust this grievance. While Plaintiff appears to have properly exhausted this particular grievance, his complaint does not allege that Defendant Abdellatif subjected him to a medication overdose or that Abdellatif accomplished such as retaliation for previously being sued by Plaintiff.

With respect to the "overdose" incident, Plaintiff alleges that he provided health care with a urine sample on December 10, 2007, which Defendant Abdellatif interpreted as revealing "no sign of infection." According to Plaintiff, he was not hospitalized for an overdose of Coumidin until March 4, 2008, almost three months later. Plaintiff does not allege that Defendant Abdellatif prescribed the Coumidin on which he overdosed or was in any way involved or responsible for this overdose. As for the allegations of retaliation articulated in this grievance, Plaintiff's complaint fails to articulate any such claim. Plaintiff alleges in his complaint that he was subjected to the confiscation of personal property, interference with his personal and legal mail, and improper denial of grievances as retaliation. Plaintiff has not alleged, however, that he was overdosed as retaliation, nor has he alleged that Defendant

Abdellatif subjected him to any form of retaliation. The Court finds, therefore, that this particular grievance fails to exhaust any claim asserted in Plaintiff's complaint.[2]

### 4.     Grievance LRF-08-01-00118-28I

Plaintiff initiated this grievance on January 26, 2008, alleging that on January 16, 2008, he was taken to the hospital to receive treatment for a blood infection that Defendant Abdellatif had refused to treat. (Dkt. #43, Exhibit D). Plaintiff also alleged that on January 16, 2008, he was suffering "profuse bleeding from [his] penis," which Defendant Abdellatif refused to treat. This grievance was rejected at all three steps of the grievance process because of Plaintiff's "failure to attempt to resolve [the dispute] with staff member involved" as required by MDOC policy. Because Plaintiff failed to properly pursue this grievance in accordance with the MDOC's guidelines, this grievance fails to exhaust any claim asserted in Plaintiff's complaint.

In sum, as discussed immediately above, the Court concludes that the only claim articulated in Plaintiff's complaint that has been properly exhausted is Plaintiff's claim that Defendant Abdellatif failed to supply him with medical gloves. The Court recommends, therefore, that the motions to dismiss for failure to properly exhaust asserted by Defendants CMS, Burtch, Peters, Birkett, Berghuis, Smith, Rich, VanSetters, Heebsh, and Burdette be **granted**. The Court further recommends that Defendant Abdellatif's motion to dismiss for failure to properly exhaust be **granted in part and denied in part**. Before proceeding further, the Court must address an issue raised by Plaintiff in response to Defendants' motions to dismiss for failure to properly exhaust administrative remedies.

---

[2] As detailed below, even if Plaintiff's complaint is interpreted as asserting claims consistent with the allegations in this grievance, Defendant Abdellatif is entitled to the dismissal of such claims, as they fail to state a claim on which relief may be granted.

Plaintiff asserts that his failure to properly exhaust the claims in his complaint, and specifically his failure to identify the majority of the defendants in his grievances, should be excused because Defendants "refused to wear employee identification" or were otherwise unidentifiable. The Court disagrees. The Court certainly shares Plaintiff's concern that prison officials not be permitted to insulate themselves from liability simply by refusing to display their "employee identification" or otherwise obscuring their identify. The Court further understands that prisoners may not always be able to learn the identity of the individuals against whom they seek to file a grievance in the short period of time within which a grievance must be timely filed. However, the Court cannot permit Plaintiff to avoid altogether the exhaustion requirement by simply asserting *after the fact* that he was unable to properly exhaust the claims in his complaint because he was unable to identify the prison officials in question.

In none of the grievances discussed above, did Plaintiff assert or even suggest that he wished to grieve an individual of whose identity he was unaware. Had Plaintiff indicated *in a grievance* that the grievance was being asserted (in whole or in part) against individuals whom he was unable to identify, the Court might very well view this differently. In such a circumstance, it could perhaps be said that while Plaintiff failed to identify *by name* the prison official against whom the grievance was asserted, Plaintiff nonetheless put prison officials on notice that certain prison officials (yet to be identified by name) had committed a wrongful act against him. Considering the underlying purpose of the exhaustion requirement, such *may*, depending on the facts and details provided in the grievance, warrant a finding that the exhaustion requirement has been satisfied. Plaintiff, however, made no such assertions in his grievances. Accordingly, while the Court shares Plaintiff's concern, the Court finds that on the facts presented, Plaintiff's argument in this regard is without merit.

**II.**         **Defendant Abdellatif's Motion to Dismiss**

As discussed above, Plaintiff has properly exhausted his claim that Defendant Abdellatif failed to supply him with medical gloves. The Court interprets this claim as implicating Plaintiff's Eighth Amendment right to be free from cruel and unusual punishment. Defendant Abdellatif asserts that this claim must be dismissed for failure to state a claim upon which relief may be granted. The Court disagrees.

When considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court must accept as true all Plaintiff's allegations and construe the complaint liberally in his favor. *See Herron v. Harrison*, 203 F.3d 410, 414 (6th Cir. 2000). Furthermore, complaints filed by pro se plaintiffs are held to an "especially liberal standard, and should only be dismissed for failure to state a claim if it appears 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Id.* (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

The Eighth Amendment's prohibition against cruel and unusual punishment applies not only to punishment imposed by the state, but also to deprivations which occur during imprisonment and are not part of the sentence imposed. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Estelle v. Gamble*, 429 U.S. 97, 101-02 (1976). Accordingly, the Eighth Amendment protects against the unnecessary and wanton infliction of pain, the existence of which is evidenced by the "deliberate indifference" to an inmate's "serious medical needs." *Estelle*, 429 U.S. at 104-06; *Napier v. Madison County, Kentucky*, 238 F.3d 739, 742 (6th Cir. 2001).

The analysis by which Defendant's conduct is evaluated consists of two steps. First, the Court must determine, objectively, whether the alleged deprivation was sufficiently serious. In this respect, "the inmate must show that he is incarcerated under conditions posing a substantial risk of

serious harm." *Farmer*, 511 U.S. at 834. If the objective test is met, the Court must then determine whether Defendant possessed a sufficiently culpable state of mind:

> a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Id.* at 837.

In other words, Plaintiff must establish that Defendant "actually knew" that he "faced a substantial risk of serious harm and disregarded that risk by failing to take reasonable measures to abate it." *Howard v. Calhoun County*, 148 F.Supp.2d 883, 888-89 (W.D. Mich. 2001) (citing *Farmer*, 511 U.S. at 847).

Defendant asserts that a claim of deliberate indifference must be dismissed where such is premised on allegations of negligence or disagreement as to the treatment received. The Court does not disagree. However, Plaintiff's claim is that Defendant Abdellatif refused to provide him with medical gloves that he needed to safely care for his personal needs. On its face, this claim is not based on negligence or mere disagreement in treatment. While Defendant Abdellatif may be able to eventually produce evidence that entitles him to relief, at this juncture the Court finds, in light of the standard articulated above, that Plaintiff has sufficiently stated a claim that Defendant Abdellatif's alleged refusal to provide Plaintiff with medical gloves states a claim for violation of Plaintiff's Eighth Amendment rights. Accordingly, the Court recommends that Defendant Abdellatif's motion to dismiss this particular claim be **denied**.

**III.**     **Plaintiff's Retaliation and Overdose Claims**

As noted above, in Grievance LRF-08-03-00268-12DI Plaintiff asserted that due to Defendant Abdellatif's "incompetence," he suffered an overdose of Coumadin. Plaintiff also alleged in this grievance that Defendant Abdellatif deliberately subjected him to this overdose as retaliation for being sued by Plaintiff in a separate action. As previously discussed, the Court finds that while Plaintiff appears to have properly exhausted this grievance, Plaintiff did not assert these claims in his complaint. However, if this determination is in error, the Court recommends in the alternative that these claims be dismissed for failure to state a claim upon which relief may be granted, as Defendant Abdellatif urges.

A.     Incompetence

In Grievance LRF-08-03-00268-12DI Plaintiff asserted that Defendant Abdellatif's "incompetence" caused him to suffer a Coumadin overdose. The only allegations in Plaintiff's complaint against Defendant Abdellatif concerning this alleged incident are that Abdellatif, on or about December 19, 2007, reviewed the results of a urine test and determined that Plaintiff was not suffering from a urinary infection. Plaintiff asserts that Defendant Abdellatif's conclusion was in error.

While Plaintiff disputes the accuracy of Defendant Abdellatif's assessment, Plaintiff has not alleged that Defendant refused to evaluate the results of his urine test or improperly delayed his evaluation thereof. Plaintiff acknowledges that Defendant Abdellatif evaluated the results of his urine test, but asserts that Defendant failed to discern that he was, in fact, suffering from a urine infection. Plaintiff alleges that Defendant's failure constitutes negligence.

To the extent, however, that Plaintiff merely disagrees with the treatment he received, or asserts that he received negligent care, Defendant Abdellatif is entitled to relief. *See Williams v.*

*Mehra*, 186 F.3d 685, 691 (6th Cir. 1999) (citing *Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976)) ("[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner"); *Brown v. Kashyap*, 2000 WL 1679462 at *1 (6th Cir., Nov. 1, 2000) (citing *Estelle*, 429 U.S. at 106) ("allegations of medical malpractice or negligent diagnosis and treatment" do not implicate the Eighth Amendment). The Court recommends, therefore, that in the event that Plaintiff's complaint is interpreted as asserting against Defendant Abdellatif the Eighth Amendment claim advanced in Grievance LRF-08-03-00268-12DI that such claim be dismissed for failure to state a claim on which relief may be granted.

        B.      Retaliation

The elements of a First Amendment retaliation claim are as follows: (1) Plaintiff was engaged in constitutionally protected conduct, (2) Plaintiff suffered adverse action which would deter a person of "ordinary firmness" from continuing to engage in such protected conduct, and (3) there exists a causal connection between the protected conduct and the adverse action - in other words, the adverse action was motivated at least in part by Plaintiff's protected conduct. *See Thomas v. Eby*, 481 F.3d 434, 440 (6th Cir. 2007) (quoting *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999)).

Plaintiff asserts that Defendant Abdellatif caused him to overdose on Coumadin as retaliation for being sued by Plaintiff in a previous lawsuit. This allegation satisfies the first two requirements identified above. However, Plaintiff must also establish that the adverse action taken against him was motivated, at least in part, by the protected conduct in which he engaged. In examining this element, Defendant's subjective motivation is at issue and while Plaintiff is not subject to a heightened pleading standard, his burden is not trivial.

As courts recognize, retaliation is "easy to allege" and "can seldom be demonstrated by direct evidence." *Huff v. Rutter*, 2006 WL 2039983 at *7 (W.D. Mich., July 19, 2006) (quoting *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987)). Nonetheless, "bare allegations of malice" are insufficient to state a constitutional claim, as Plaintiff must instead establish "that his protected conduct was a motivating factor" behind the allegedly retaliatory action taken. *Thaddeus-X*, 175 F.3d at 399 (citations omitted); *see also*, *Desmone v. Adams*, 1998 WL 702342 at *3 (6th Cir., Sep. 23, 1998) ("[a] claim of retaliation must include a chronology of events from which retaliation may plausibly be inferred").

Aside from stating in conclusory fashion that he was retaliated against, Plaintiff has failed to allege facts from which retaliation can plausibly be inferred. Such fails to state a claim on which relief may be granted. *See, e.g., McMillan v. Fielding*, 136 Fed. Appx. 818, 820-21 (6th Cir., June 7, 2005) (holding that dismissal for failure to state a claim is appropriate where the plaintiff's allegations regarding causation "were purely conclusory") (citing *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998)). The Court recommends, therefore, that in the event that Plaintiff's complaint is interpreted as asserting against Defendant Abdellatif the retaliation claim advanced in Grievance LRF-08-03-00268-12DI that such claim be dismissed for failure to state a claim on which relief may be granted.

**IV.        Plaintiff's Claims Against Defendants Belanger and Simmons**

Plaintiff initiated the present action on June 18, 2008. On July 3, 2008, the Court notified Plaintiff that because he was not proceeding as a pauper in this matter, "he is responsible for service of summons and complaint upon Defendants." (Dkt. #2). On July 7, 2008, the Court issued and returned to Plaintiff summonses for Defendants Belanger and Simmons. Plaintiff's attempts to effect service on these defendants were rejected on August 4, 2008. (Dkt. #4-5). More than five months have since

passed and Plaintiff has failed to effect service on Defendants Belanger and Simmons or request an extension of time within which to effect service on these defendants.

Federal Rule of Civil Procedure 4(c) indicates that "[a] summons must be served together with a copy of the complaint." The time frame within which service must be effected is articulated in Rule 4(m), which provides that if service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, "the court, upon motion or on its own initiative after notice to the plaintiff, shall dismiss the action without prejudice as to that defendant." If the plaintiff demonstrates good cause for such failure, however, "the court shall extend the time for service for an appropriate period." Fed. R. Civ. P. 4(m); *see also*, *Bush v. City of Zeeland*, 2003 WL 22097837 at *2 (6th Cir., Sep. 5, 2003) (citation omitted). Considering Plaintiff's lack of diligence in this matter, the Court recommends that Plaintiff's claims against Defendants Belanger and Simmons be dismissed without prejudice for failure to timely effect service.

## CONCLUSION

For the reasons articulated herein, the Court recommends that Defendant Joseph Robert Burtch, D.O.'s Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6), (dkt. #24), be **granted**. The Court recommends that Defendants' Motion to Dismiss and/or Motion for Summary Judgment, (dkt. #42), be **granted**.

The Court recommends that Defendants Correctional Medical Services, Inc., Badawi M. Abdellatif, M.D., and Sarah Hope Heebsh, P.A.'s Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6), (dkt. #21), be **granted in part and denied in part**. Specifically, the Court recommends that Plaintiff's claims against Defendant Heebsh be dismissed and that Plaintiff's claims against Defendant

Abdellatif be dismissed, except for Plaintiff's Eighth Amendment claim that Defendant Abdellatif failed to provide him with medical gloves, which the Court recommends be permitted to go forward.

The Court further recommends that Plaintiff's claims against Defendants Belanger and Simmons be **dismissed without prejudice for failure to timely effect service**.

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within ten (10) days of the date of service of this notice.  28 U.S.C. § 636(b)(1)(C).  Failure to file objections within the specified time waives the right to appeal the District Court's order.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

Respectfully submitted,

Date:  January 23, 2009

 /s/ Ellen S. Carmody
ELLEN S. CARMODY
United States Magistrate Judge